JUDGE ROBINSON

MICHAEL G. O'NEILL
(MO3957)
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

08 CV 3521

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARGUELITA BOURSIQUOT,

    Plaintiff,

- against -

SENIOR HOME CARE, INC., AND SUSAN DIAMOND,

    Defendants.

08 Civ. ( )

**Complaint and Demand for Jury Trial**

---

Plaintiff Marguelita Boursiquot, by her attorney, Michael G. O'Neill, states for her complaint against the defendants as follows:

### PRELIMINARY STATEMENT, JURISDICTION AND VENUE

1. This in a civil action to remedy defendant's violation of plaintiff's rights, brought pursuant to 42 USC §1981, New York State Executive Law §296 et seq., and related state and federal statutes.

2. This Court has jurisdiction over the subject matter of this lawsuit by virtue of 28 U.S.C. §1331, 28 U.S.C. §1343 and 28 U.S.C. §1367.

3.	Venue is proper pursuant to 28 U.S.C. §1391(b) in that defendants are residents of the Southern District of New York and the cause of action arose in the Southern District of New York.

## PARTIES

4.	Plaintiff is an African American woman.

5.	Defendant Senior Home Care, Inc. ("Home") is a New York Corporation with its principal office in the County of New York, State of New York.

6.	Defendant Susan Diamond ("Diamond") is the President and one of the owners of Home.

## FACTS

7.	The defendants are, and at all times relevant herein have been, engaged among other things in the business of providing health care services at so-called senior residences. A senior residence combines rental housing with planned activities, meal facilities, on site medical facilities and related services and amenities for senior citizens. Typically, the senior residence is owned by an affiliate of the defendants, and defendant Home operates the medical facilities at the senior residence.

8.	One such senior residence is located in Palisades, New York, known as The Esplanade at Palisades ("Esplanade"). Diamond is the President and one of the owners of the Esplanade.

9. Upon information and belief, the Esplanade is a corporate affiliate of Home.

10. Home operates a medical facility at the Esplanade.

11. Beginning in about July, 2004, plaintiff was employed by Home as a manager at its facility at the Esplanade. At all times plaintiff's attendance and work performance met or exceeded the reasonable performance expectations of Home.

12. Plaintiff was not hired by Diamond, and during the initial period of plaintiff's employment, Diamond was not actively involved in the overall operations of Home's facility at the Esplanade.

13. Beginning in early 2005, however, Diamond became more involved in the day to day management of Home's facility at the Esplanade, which brought plaintiff into more direct contact with Diamond. At about the same time, plaintiff learned that she was pregnant, and in or about May, 2005, she notified defendants of that fact. Diamond, who was a high ranking executive officer of Home, actively participated in all the events and transactions described below.

14. Plaintiff's pregnancy coincided with the pregnancy of another key employee at the Esplanade, who was also African American and who also had not been hired by Diamond.

15. Diamond and the General Manager of the Esplanade began to make disparaging comments about plaintiff and the other pregnant African American employee. Some of these disparaging comments related to their pregnancy, and others were simply unwarranted complaints about their work performance.

16. Eventually, Diamond instructed the supervisor of plaintiff and the other pregnant African American to "find a reason" to terminate their employments.

17. On or about November 15, 2005, just before she was to take her maternity leave, plaintiff was terminated from her employment without cause.

18. Around the same time the other pregnant African American was also terminated from her employment.

19. Both plaintiff and the other pregnant African American employee were replaced by White, Orthodox Jewish women. Diamond is White, Orthodox Jewish, as was the General Manager of the Esplanade.

20. In addition to the blatant discrimination against plaintiff on account of her pregnancy, defendants also discriminated against plaintiff on account of her race and ethnicity. Not only were both plaintiff and the other pregnant African American replaced by employees of the same race and ethnicity as Diamond and the General Manager of the Esplanade, but defendants' treatment of those replacement employees stood in sharp contrast to their treatment of plaintiff and the other African American employee who was terminated for her pregnancy.

21.     The replacement employees were paid far more than plaintiff and the other African American employee. Although the other African American employee had ostensibly been terminated for missing excessive days from work because of her pregnancy, one of the replacements was frequently given leave to travel to Israel and for other personal reasons. Most outrageously, one of the replacements herself became pregnant, but she was not subjected to any adverse employment actions because of her pregnancy. Thus, defendants disregarded the legally protected rights of the African American employees who became pregnant, but respected those rights when it came to a White, Orthodox Jewish employee.

### First Claim

22.     The race and ethnicity of plaintiff was a motivating factor in defendants' decision to discriminate against her on the basis of her pregnancy and to terminate her employment.

23.     By taking race into account with respect to the aforesaid adverse employment actions, defendants violated plaintiff's rights under 42 U.S.C. §1981.

24.     As a result of the defendants' violation of 42 U.S.C. 1981, plaintiff has suffered and continues to suffer damages, for which the defendants are legally accountable.

### Second Claim

25.     Plaintiff's pregnancy was a motivating factor in Home's decision to terminate plaintiff's employment.

26. By taking plaintiff's pregnancy, as well as her race and ethnicity, into account, with respect to the termination of plaintiff's employment, Home violated plaintiff's rights under the New York State Executive Law.

27. As an owner and high ranking executive of Home who actively participated in the illegal conduct complained of herein, Diamond also violated plaintiff's rights under the New York State Executive Law.

28. As a result of defendants' violation of the New York State Executive Law, plaintiff has suffered and continues to suffer damages, for which the defendants are legally accountable.

**WHEREFORE**, plaintiff demands judgment providing all relief allowed by law, including:

a. Awarding plaintiff a money judgment for her damages, including but not limited to lost wages, lost benefits, other economic damages, shame, humiliation, embarrassment and mental distress;

b. Awarding plaintiff punitive damages;

c. Awarding plaintiff attorneys' fees;

d. Awarding prejudgment interest and costs; and

e. Granting such further and additional relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
April 10, 2008

MICHAEL G. O'NEILL

By: Kosta Kollef (KK2997)
Attorneys for Plaintiff
30 Vesey Street
New York, New York 10007

## JURY DEMAND

Plaintiff demands trial by jury in this action.

Dated: New York, New York
April 10, 2008

MICHAEL G. O'NEILL

By: Kosta Kollef (KK2997)
Attorneys for Plaintiff
30 Vesey Street
New York, New York 10007